422 So.2d 673 (1982)
HUNTER'S GROVE HOMEOWNERS ASSOCIATION, et al., Plaintiffs-Appellants,
v.
CALCASIEU PARISH POLICE JURY, et al., Defendants-Appellees.
No. 82-293.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
*674 Rester & Van Norman, John L. Van Norman, III, Lake Charles, for plaintiffs-appellants.
Mike Bercier, Lake Charles, for defendants-appellees.
McHale, Bufkin & Dees, Michael K. Dees, Lake Charles, for intervenor-appellee.
Before FORET, CUTRER and STOKER, JJ.
FORET, Judge.
Hunter's Grove Homeowners Association and Acadian Acres Homeowners Association (plaintiffs)[1] brought this action for a declaratory judgment against defendants, Calcasieu Parish Zoning Commission (Zoning Commission) and Calcasieu Parish Police Jury (Police Jury), seeking to have two ordinances adopted by the Police Jury declared to be invalid, null and void. These ordinances changed the zoning classifications on two tracts of land located in Calcasieu Parish. John L. Gayle (intervenor), one of the owners of these tracts of land, filed a petition of intervention, aligning himself with defendants.
The trial court, after trial on the merits, rendered judgment in favor of defendants and intervenor, and against plaintiffs, dismissing plaintiffs' action with prejudice.
*675 Plaintiffs appeal and present the following issues:
(1) Whether the trial court erred in finding that defendants had used the proper procedures, mandated by law, in adopting the rezoning ordinances;
(2) Whether defendants' actions in rezoning the tracts of land constituted illegal "spot zoning", and
(3) Whether the trial court erred in finding that no evidence was presented to indicate that the Police Jury had acted in an arbitrary, capricious, or unreasonable manner in rezoning the tracts of land.

FACTS
Plaintiffs brought this action in response to the adoption, by the Police Jury, of ordinances # 2097 and # 2112. These ordinances were adopted on the basis of recommendations made to the Police Jury by the Zoning Commission. Ordinance # 2097 was adopted by the Police Jury on January 22, 1981, and provided:
"... that Calcasieu Parish Zoning Ordinance No. 1927 and the Comprehensive Zoning District Map of Calcasieu Parish, Louisiana, be and they are hereby amended insofar as said ordinance and map pertain to the following property in Ward Three of this parish: from `R-1' Single Family Residential to `R-2' Mixed Residential property described as Prien Prairie Subdivision Part 1 as per plat recorded in Plat Book 29, Page 32 of Calcasieu Parish, Zoning Case W3-05-81 ..." (Tract Number 1).
Ordinance # 2112 was adopted by the Police Jury on February 19, 1981, and provided:
"... that Calcasieu Parish Zoning Ordinance No. 1927 and the Comprehensive Zoning District Map of Calcasieu Parish, Louisiana, be and they are hereby amended insofar as said ordinance and map pertain to the following property in Ward Three of this parish: from `R-1' Single Family Residential to `R-2' Mixed Residential property described as: The south half of the Southwest Quarter of Section 35 less Prien Prairie Subdivision, Part 1, Ward Three, Calcasieu Parish, Louisiana. Zoning Case W3-07-81 ..." (Tract Number 2).
The main distinction to be noted for our purposes is that the R-1 Single Family Residential zoning regulation permits the construction of single family dwellings, excluding mobile homes, while the R-2 Mixed Residential zoning regulation permits the construction of single family dwellings, including single unit mobile homes (1 per lot).
Plaintiffs are composed of a majority of the individual landowners in Hunter's Grove Subdivision (Hunter's Grove) and Acadian Acres Subdivision (Acadian Acres). Both subdivisions are located near the rezoned land, and both are still zoned R-1. Intervenor is in the process of developing the rezoned land, and mobile homes have been placed on some of the lots therein. Plaintiffs brought this action mainly because of the concern of their members that property values in the subdivision would be adversely affected by the presence of mobile homes. In addition to seeking a judgment declaring the above mentioned ordinances to be invalid, plaintiffs also sought to have the trial court issue a writ of mandamus directed to defendants
"... to show cause ... why they should not perform their ministerial duties by giving proper notice as to hearings which concern rezoning TRACT NUMBER 1 and TRACT NUMBER 2 and by conducting public hearings in accordance with applicable law".
Finally, plaintiffs requested that the trial court issue a stay order, staying the effect of the Police Jury's decision to rezone the land, pending further orders of the court.
In response, defendants filed dilatory exceptions of vagueness and unauthorized use of summary proceedings. The trial court, after conducting a hearing on defendants' exceptions, rendered judgment, sustaining the exception of unauthorized use of summary proceedings, and denying plaintiffs' *676 request for the issuance of a writ of mandamus.[2]
Intervenor then filed an "EXCEPTION OF PRESCRIPTION OR PREEMPTION OR MOTION TO DISMISS FOR FAILURE TO TIMELY FILE SUIT." Immediately prior to the trial on the merits, the trial court conducted a hearing on intervenor's exception. After the hearing, the trial court stated that it, "... finds that the exception is well founded as to the first ordinance, which was 2097. It's not well founded as to the second one." The minutes of court for February 4, 1982, recite that:
"... the Court maintains the exception as to Ordinance Number 2097 and overrules the exception as to Ordinance Number 2112".
However, a review of the record shows that no formal judgment sustaining intervenor's exception was signed by the trial court. Plaintiff was allowed to introduce evidence with respect to Ordinance Number 2097 under a proffer of proof, and we will consider plaintiffs' arguments on the merits as to both ordinances.

DEFENDANTS' ALLEGED PROCEDURAL ERRORS
Plaintiffs contend that the trial court committed error in finding that defendants had complied with the requirements of law setting forth the procedure to be followed in enacting zoning ordinances. Plaintiffs argue that defendants violated certain provisions of Acts 1960, Number 196 (the enabling act), which authorizes the Police Jury to adopt comprehensive zoning plans, and to make changes in those plans. Specifically, plaintiffs point to Section 4 of the above mentioned act, which provides:
"Section 4. The police jury of the Parish shall provide for the manner in which the regulations and restrictions and the boundaries of the districts shall be determined, established and enforced, and from time to time, amended. No regulations or restrictions shall become effective until after a public hearing at which parties in interest have an opportunity to be heard. A public hearing in relation to the regulations may be held by the governing authority of the parish. In such case, notice of the time and place of the hearing shall be published once a week in three different weeks in the official journal of the parish, or, if there be none, in a paper of general circulation therein. At least fifteen days shall elapse between the first publication and the date of the hearing."
(Emphasis ours)
Plaintiffs argue that the Police Jury chose to conduct public hearings on the proposed zoning changes, when it considered the Zoning Commission's recommendations regarding those changes at its regular meetings. We disagree.
Section 6 of Acts 1960, Number 196 provides:
"Section 6. The Parish Planning Commission created and established by the provisions of Sub-Part A of Part IV of Chapter 1 of Title 33 of the Louisiana Revised Statutes of 1950 shall be the Zoning Commission for the Parish of Calcasieu and shall exercise all powers, duties and functions herein provided. It shall be the duty of said Zoning Commission to recommend the boundaries of the various original districts as well as the restrictions and regulations to be enforced therein, and any supplements, changes or modifications thereof. Before making any recommendation to the police jury of the parish, the Zoning Commission shall hold a public hearing. Notice of the time and place of the hearing shall be published at least three times in the official journal of the parish, or if there be none, in a paper of general circulation therein, and at least ten days shall elapse between the first publication and date of the hearing. After the hearing has been held by the Zoning Commission, it shall make a report of its findings and recommendations to the police jury of the parish. The police jury shall not hold its public hearings *677 or take action until it has received the final report of the Zoning Commission."
(Emphasis ours.)
It is clear that, before making any recommendation to the Police Jury concerning zoning changes, the Zoning Commission "shall" hold a public hearing, and that notice of the time and place of that hearing "shall" be advertised as set forth in Section 6 of the enabling act. The evidence clearly shows that the Zoning Commission held public hearings on both of the proposed zoning changes, and that notice of the time and place of both of the hearings was advertised in accordance with law.
It is equally clear that Section 4 of the enabling act leaves it to the discretion of the Police Jury to decide whether it will conduct a public hearing on proposed zoning changes. It is our opinion that the decision of the Police Jury to consider proposed zoning changes at its regular meetings does not constitute a "public hearing" on the proposed changes, as contemplated by Section 4 of the enabling act, and that the Police Jury is not required to give notice of the time and place of its regular meetings simply because it will consider proposed zoning changes at that time.
The trial court correctly found that defendants had complied with the procedural requirements of law in adopting Ordinance Number 2112, and we find that the same is true with respect to Ordinance Number 2097.
Plaintiffs next contend that, before a zoning board rezones property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood has changed to such an extent that reclassification ought to be made. Further, that the burden of proof of the original mistake or the need of substantial change in zoning of the property is on the proponents for the change. Plaintiffs cite Dufau v. Parish of Jefferson, 200 So.2d 335 (La.App. 4 Cir.1967), in support of their contentions. We find Dufau to be distinguishable from the present action on its facts.
A reading of Dufau shows that plaintiff and intervenors therein were owners of property which had been rezoned by the Jefferson Parish Council. Thus, they had vested property interests in the land rezoned. In the action sub judice, plaintiffs' members have no vested property interest in the land rezoned. They merely own property adjacent to, or in the vicinity of, this land. There is no merit to plaintiffs' contention.

ALLEGED SPOT ZONING
Plaintiffs contend that the action of the Police Jury in rezoning the tracts of land constitutes illegal "spot zoning".
Spot zoning is the practice of giving a small parcel of land a different classification from the surrounding area for the benefit of the owners of the small parcel. Trustees Under Will of Pomeroy v. Town of Westlake, 357 So.2d 1299 (La.App. 3 Cir. 1978), writ denied, 359 So.2d 205 (La.1978); Cook v. Metropolitan Shreveport Board of Appeals, 339 So.2d 1225 (La.App. 2 Cir. 1976), writ denied, 341 So.2d 1123 (La.1977).
Sears, Roebuck & Company v. City of Alexandria, 155 So.2d 776 (La.App. 3 Cir. 1963), writ denied, 245 La. 83, 157 So.2d 230 (1963), quoting from 101 C.J.S. Verbo Zoning, Section 34, pages 741-742 stated that:
"Spot zoning is an attempt to wrench a single lot from its environment and give it a new rating that disturbs the tenor of the neighborhood, and which affects only the use of a particular piece of property or a small group of adjoining properties and is not related to the general plan for the community as a whole, but is primarily for the private interest of the owner of the property so zoned; and it is the very antithesis of planned zoning. It has generally been held that spot zoning is improper, and that one or two building lots may not be marked off into a separate district or zone and benefited by peculiar advantages or subjected to peculiar burdens not applicable to adjoining similar lands.

*678 "It appears, however, that so-called `spot zoning' is not illegal in all cases, and whether it is so depends on the particular facts of the case, and on whether the municipality's action is properly related to the public health, safety, morals, and general welfare, designed to serve the best interest of the community as a whole, and in accordance with a comprehensive zoning plan. The mere fact that an ordinance creates numerous small zones indiscriminately scattered throughout the city, frequently consisting of only one lot, does not render it invalid, and a mere allegation that a certain order constitutes spot zoning does not necessarily make the order illegal.
"Whether a zoning ordinance is invalid as an entirety in that it is merely spot zoning depends on more than the size of the `spot', although the size is an important consideration; and, where it does not appear that there is a singling out of one lot for treatment different from that accorded to similar surrounding land indistinguishable from it in character, such spot zoning is not illegal."
The evidence shows that the tracts of land rezoned are adjacent to each other and contain approximately 40 acres. The land has been owned by intervenor's family for at least 75 years, and had been farmed by them on and off for some 30 years. Intervenor testified that the family still farmed land located immediately west of that rezoned. However, they had to cease farming operations on the land in question because the development of Hunter's Grove precluded aerial spraying, which was necessary to make the operation profitable. Photographs introduced in evidence, together with testimony adduced, clearly show that much of the land surrounding the tracts rezoned is basically rural and open fields. Further, there are two tracts of land in the area presently zoned to permit the development of mobile home parks, and they have been developed in this manner.
Under these facts and circumstances, we see no need to conduct an extensive analysis of the evidence in light of the factors enumerated in Sears, Roebuck & Company v. City of Alexandria, supra, to make a determination as to whether the action of the Police Jury constituted illegal spot zoning. Here, we are concerned with a fairly large tract of land situated in an area that is still rural and undeveloped to a large extent, rather than an urban area where small tracts of land have been rezoned. It is our opinion that there is no merit to plaintiffs' contentions that the Police Jury engaged in illegal spot zoning.

REASONABLENESS OF POLICE JURY'S ACTION
Plaintiffs contend that the Police Jury acted arbitrarily, capriciously, and unreasonably in rezoning the tracts of land. They argue that no rational reason was given for taking this action.
Zoning ordinances adopted in accordance with the procedures set out in the enabling statutes are presumed to have been adopted by the governing authorities for valid purposes. All such ordinances are presumed to be valid and the burden is on the party attacking a zoning ordinance to overcome this presumption of validity. The court will uphold the ordinance unless it is clearly shown that the action of the governing authority was arbitrary or unreasonable, or that the action taken violated a provision of the constitution or of the enabling statutes. Doubtful cases will be decided in favor of the validity of the zoning law. Kirk v. Town of Westlake, 373 So.2d 601 (La.App. 3 Cir.1979), writ denied, 376 So.2d 1268 (La.1979); Hardy v. Mayor & Board of Aldermen, City of Eunice, 348 So.2d 143 (La.App. 3 Cir.1977), writ denied, 350 So.2d 1212 (La.1977); Sears, Roebuck & Co. v. City of Alexandria, supra.
A court will not substitute its views for those of the governing body as to the wisdom of or the need for a change in the zoning regulations, except when it appears that there has been an abuse of discretion or an excessive use of power. The exercise of its police power by a governing authority in establishing or amending zoning *679 regulations will not be upheld, if it is shown that there has been an abuse of discretion or the excessive use of power, or that the action taken was arbitrary or unreasonable, or that it bears no relation to the health, safety, or general welfare of the public. Kirk v. Town of Westlake, supra; Meyers v. City of Baton Rouge, 185 So.2d 278 (La.App. 1 Cir.1966).
James J. Vickers, Planning Director for the Police Jury, testified as to his reasons for recommending to the Zoning Commission that the land be rezoned. He first noted that, under the R-2 zoning regulation, the only additional use permitted would be that a single family mobile home could be placed on each lot. Thus, the change in zoning would generate no more traffic, nor worsen the drainage in the area, than would the construction of standard single family dwellings on each lot. Vickers also noted the fact that a great need existed in the area for this type of development as economic conditions precluded the construction of standard single family dwellings by many people. He testified that it was virtually impossible to locate a mobile home within the city of Lake Charles.
Intervenor testified that his family had initially considered developing the land for standard single family dwellings. However, economic conditions deteriorated to the point that few people were buying land on which to construct that type of housing. They then decided to develop the land as a mobile home subdivision. Once they did this, the 27 lots comprising the first tract of land were sold within a two-month period. The second tract of land, which is about three times as large as the first, was divided into lots for sale in November of 1981, and approximately 2/3 of those lots were sold within three months.
We find that the Police Jury's action in rezoning the tracts of land was related to the general welfare of the public. There was a great need for the adequate and affordable housing that could be provided by developing the land as a mobile home subdivision. Robert Doyle, an expert appraiser, testified that between 75% to 80% of those currently purchasing housing were opting for mobile homes. He opined that the development of the mobile home subdivision would have no detrimental effect on property values in either Hunter's Grove or Acadian Acres. Daniel Plauche, another expert appraiser, also testified as to the need for this type of development. It was his opinion that, given the current trends, this type of development could become the predominant type for the future in the area. The trial court evidently accepted the opinions of these experts as opposed to that of the expert appraiser called by plaintiffs, which was to the contrary.
The trial court's finding, that plaintiffs failed to present any evidence to show that defendants had acted in an arbitrary, capricious, or unreasonable manner, is correct.
Finally, plaintiffs contend that the trial court failed to give proper consideration to Section 3 of the enabling act in reaching its decision. Section 3 of the act provides:
"Section 3. Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the public streets; to secure safety from fires; to promote health and the general welfare; to provide adequate light and air; to avoid undue concentration of population; to facilitate adequate transportation, water supply, sewerage, schools, parks, and other public requirements. The regulations shall be made with reasonable consideration of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout the Parish."
The evidence shows that defendants are presently in the process of developing a comprehensive plan for zoning all land, other than the incorporated areas, in Calcasieu Parish. There has been no showing made that the rezoning of the tracts of land was made in any manner, other than pursuant to this developing comprehensive plan. The analysis of the evidence, set forth above, indicates that neither defendant violated *680 the provisions of Section 3 of the enabling act. A review of the trial court's oral reasons for judgment shows that it did not specifically mention Section 3 therein. However, the oral reasons for judgment support a conclusion that the trial court did consider the provisions of this section in rendering its judgment. The record contains much evidence pertinent to a resolution of the issue of whether defendants had complied with these provisions. There is no merit to plaintiffs' contention.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Both plaintiffs are unincorporated associations. In this action, Hunter's Grove Homeowners Association appeared through and was represented by its President, Paul K. Hall, while Acadian Acres Homeowners Association appeared through and was represented by its President, Steven R. Guillory.
[2] Defendants subsequently withdrew their exception of vagueness.