THOMPSON, Judge.
K.S.S.V. (“the mother”) and W.L.S. (“the father”) were divorced by a judgment of the Montgomery County Circuit Court in April 1986. The mother was awarded permanent custody of the parties’ daughter. The father was ordered to pay child support in the amount of $100 every two weeks.
Shortly after the divorce, the father was convicted of first-degree rape and sodomy of the parties’ daughter. As a result, the father was incarcerated from June 1986 to December 1996. During his incarceration, the father failed to make child-support payments. After the father was released, he began making child-support payments again, in March 1997. The parties’ daughter reached the age of majority on November 5, 1999. The father ceased making child-support payments in November 1999.
On February 4, 2000, the mother, acting pro se, filed a process of garnishment to collect the past-due child support accrued from April 1986 to March 1997. She alleged that the father owed $31,937. In response, the father filed a motion to set aside the garnishment and for a hearing to ascertain the correct amount of child support owed. The mother retained counsel and filed a motion to dismiss the father’s motion and an answer to the father’s motion. The trial court denied the mother’s motion to dismiss. On April 17, 2000, the mother filed child-support calculations wherein she alleged that the father owed $28,300 in principal, $28,160 in interest, and $17 in court costs.
Following a hearing on April 18, 2000, the court ordered, on May 18, 2000, that the father pay the mother $28,300 in principal, $28,160.04 in interest, and $17 in court costs, for a total of $56,477.04. The father was ordered to make payments of $500 per month. A continuing income-withholding order was served on the father’s employer on May 25, 2000.
On June 12, 2000, the trial court entered a corrected order. In that order, the father was ordered to pay $541.67 per month. The father’s employer was again served with an income-withholding order. The father filed a postjudgment motion. The father’s employer filed a response to the income-withholding order, stating that the father’s gross income was $500.80 per week and his disposable earnings were $380.80 per week. The trial court denied the father’s postjudgment motion on August 15, 2000. The father appealed.
The father, acting pro se, asserts that the trial court erred in using an income-withholding order, instead of a garnishment order, to enforce the payment of a child-support arrearage, because the parties’ daughter had reached the age of majority. He further contends that it is manifestly unjust for him to be ordered to pay $56,460.04 in past-due child support and interest because he was incarcerated during much of the child’s minority.
Determination of the amount of child-support arrearage and how any ar-rearage should be paid are matters left to the discretion of the trial court, and its judgment on such matters will not be reversed, absent an abuse of discretion. Brown v. Brown, 513 So.2d 617 (Ala.Civ.App.1987). It is well settled that child-support payments become final judgments on the date they are due, and once they have matured they are immune from change or modification. Ex parte State ex rel. Daw, 786 So.2d 1134, (Ala.2000)(citing Ex parte State ex rel. Lamon, 702 So.2d *779 449 (Ala.1997)). In addition, past-due installments of child support are final judgments that may be collected as any other judgment. Motley v. Motley, 505 So.2d 1228 (Ala.Civ.App.1986).
The father argues that § 30-3-60(8), AIa.Code 1975, allows an income-withholding order to be used only to order support for a minor child, and, that because the parties’ daughter was no longer a minor when the mother initiated her action to collect the child-support arrear-age, the trial court erred in issuing an income-withholding order. We agree.
Section 30-3-60, Ala.Code 1975, contains definitions that pertain to withholding orders for child support. See § 30-3-60, Ala.Code 1975. Section 30-3-60(8) defines “Support or Support Order.” as “[sjupport of a minor child and spousal support when such spousal support is collected by the Department of Human Resources.... ”
In construing a statute, this court looks to the plain meaning of the words used by the Legislature. Our supreme court has said:
“ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ”
Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998)(quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)).
“It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.”
DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998). Although we have found no cases that discuss whether an income-withholding order can be used to collect child-support arrearage after the child for whom the support was intended has reached the age of majority, our supreme court has held that the term “child-support obligation” does not encompass a child-support arrear-age. Ex parte State ex rel. Daw, supra, 786 So.2d 1134. In so holding, our supreme court stated:
“A child-support obligation is based on the court’s expectation that the obligor will pay in accordance with the court’s established schedule. A delinquent child-support obligation, however, receives different treatment. It is clear that ‘child support payments become final judgments on the day they are due.’ Ex parte State ex rel. Lamon, 702 So.2d 449, 450 (Ala.1997). Thus, the character of the obligation changes once it becomes delinquent, because the fact of the delinquency causes the party to whom the debt is owed to become a judgment creditor, a creditor who may then pursue the typical means of collection that are available to the holder of any judgment. Ex parte State ex rel. Lamon, 702 So.2d at 450. Therefore, a delinquent payment constitutes a legal liability of the obligor, while a child-support obligation is only an expectation *780 that the obligor will make a payment in the future.”
786 So.2d at 1137 (Some citations omitted).
In this case, the moneys were ordered to be withheld pursuant to a continuing income-withholding order rather than a garnishment order. Although the mother initiated garnishment proceedings, after she retained counsel, she requested an income-withholding order and the trial court issued an income-withholding order as part of its judgment. Under § 6-10-7, Ala. Code 1975, no more than 25% of a garnishee’s disposable or net earnings can be garnished. However, under § 30-3-67 “[a]ny order for income withholding issued pursuant to this article may exceed the statutory minimum amounts prescribed in Section 6-10-7 for garnishment proceedings in Alabama ...” Through the use of an income-withholding order, the mother would be able to collect the child-support arrearage more quickly. However, because the statute provides that an income-withholding order can be used only for the support of a minor child and because the parties’ child was not a minor when the mother petitioned to collect child-support arrearage, the trial court erred in issuing an income-withholding order.
The father has disposable earnings of $380.80 per week. By paying $541.67 per month, he is paying approximately 33% of his disposable earnings. Although this amount is within the parameters of § 30-3-67, Ala.Code 1975, pertaining to income-withholding orders, it exceeds the 25% limitation set forth in § 6-10-7, Ala.Code. 1975.
Considering that the mother filed her petition to collect the child-support arrear-age after the parties’ daughter had reached the age of majority and in light of the plain language in § 30-3-60(8), which provides that an income-withholding order may be used for support of a minor child, we conclude that the trial court erred when it ordered that the child-support ar-rearage be paid through income withholding. See Ex parte State ex rel. Daw, supra (holding that one to whom a child-support arrearage is owed becomes a judgment creditor who may then pursue the typical means of collection that are available to the holder of any judgment).[1]
The father also argues that the trial court’s order was manifestly unjust and that the doctrine of laches is applicable. We note that this court has held that the doctrine of laches generally has no application in regard to past-due child-support payments under a valid divorce judgment. Davis v. State ex rel. Sledge, 550 So.2d *781 1034 (Ala.Civ.App.1989); Rudder v. Rudder, 462 So.2d 732 (Ala.Civ.App.1984). We conclude that the father is obligated to pay the child support that accrued during his incarceration. In Grogan v. Grogan, 608 So.2d 397 (Ala.Civ.App.1992), the father filed a petition to modify a divorce judgment. He requested that his child-support obligation be held in abeyance because he had been sentenced to the state penitentiary for 21 years. The trial court ordered that all child-support payments due to be paid to the mother be suspended until such time as he was released from the state penitentiary, but the court refused to give retroactive effect to its order to cover child-support payments. This court affirmed, holding that it was within the discretion of the trial court to suspend the accrual of child support while one is imprisoned. Grogan, supra. In addition, in Alred v. Alred, 678 So.2d 1144 (Ala.Civ.App.1996), this court, based on its holding in Grogan, concluded that the fact that the father is in prison and unemployed is a matter for consideration in determining his ability to pay. This court further stated, “If the father nevertheless has property or funds available to him, support may be ordered therefrom.” 678 So.2d at 1146; See also Smith v. Smith, 631 So.2d 252 (Ala.Civ.App.1993).
The father in this case is employed, earning approximately $1,650 per month. Therefore, we conclude that the father is obligated to pay the child support that accrued during his incarceration. He could have petitioned the trial court and requested that his payments be suspended during his incarceration; however, he failed to do so. Because child-support payments become final judgments on the day they are due and because the father in this case failed to request a suspension of his payments while he was incarcerated, we conclude that he is obligated to pay the child support that accrued during his incarceration. Ex parte State ex rel. Daw, supra; Grogan, supra.
Therefore, we are affirming the trial court’s judgment insofar as it orders payment of the child-support arrearage. We are reversing that part of the judgment that ordered that the arrearage be paid by income withholding, and we are remanding the case for an order or proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result in part and dissents in part.

. The author of this opinion also wrote the majority opinion in Davenport v. Hood, 814 So.2d 268 (Ala.Civ.App.2000), where this court held that a judgment assessing a child-support arrearage could be enforced through contempt sanctions after the child had reached the age of majority. In Davenport, this court discussed policy reasons for that holding. We relied on cases from other jurisdictions that held that child-support judgments differed from other civil judgments because of the public policy requiring parents to support their minor children. Although we feel strongly that the rationale of Davenport v. Hood and the policy considerations discussed in that opinion should govern in this case because we do not believe that a custodial parent who has borne the burden of supporting a child with little or no financial assistance from the noncustodial parent should be placed on equal footing with other judgment creditors, this court is bound by precedent. This court released Davenport v. Hood approximately two weeks before our supreme court released Ex parte State ex rel. Daw, supra, on November 17, 2000. Our supreme court has granted certiorari review in Davenport v. Hood; that case is currently pending before that court. The holding in Ex parte State ex rel. Daw is contrary to this court's holding in Davenport v. Hood. Because we are bound by precedent, we must follow Ex parte State ex rel. Daw in this case.